**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ULIOUS BROOKS,                                    Case No. 1:09-cv-922

        Plaintiff,                              Spiegel, J.
                                              Bowman, M.J.

    v.

HOMER YATES, et al.,

        Defendants.

## REPORT AND RECOMMENDATION

Plaintiff, a prisoner proceeding *pro se*, initially filed a complaint against three individual defendants (the Warden, the Institutional Inspector, and a corrections officer) on December 24, 2009. (Doc. 4). Plaintiff added two additional defendants in an amended complaint, but both were subsequently dismissed. (Docs. 57, 84). Pursuant to local practice, this case has been referred to the undersigned magistrate judge for disposition of the original Defendants' motion for summary judgment (Doc. 101).

### I. Factual Background

Plaintiff is incarcerated at the Southern Ohio Correctional Facility ("SOCF"), a maximum security prison operated by the Ohio Department of Rehabilitation and Correction ("ODRC"). Plaintiff's claims stem from events on August 14 and August 15, 2009, in which he alleges that excessive force was used against him by Defendant Correctional Officer Homer Yates. Plaintiff filed a 43 page handwritten complaint on December 24, 2009, to which he attached an additional 67 pages of supporting exhibits. In his complaint, Plaintiff states his intention to bring suit against the three Defendants "in

their own individual and official composites [sic]," (Doc. 4 at 5), which this Court construes as both individual and official capacities, pursuant to 42 U.S.C. §1983.[1]

Plaintiff, who is being treated for mental health impairments including bipolar disorder, schizophrenia, and being "hyper," (*see* Doc. 100, deposition at 8-9), generally alleges that he and Correctional Officer Homer Yates did not get along.  According to Plaintiff, Yates frequently subjected Plaintiff to verbal harassment, including racial slurs.  Plaintiff testified that the basis for Yates's animosity towards Plaintiff stemmed from Defendant's friendship with another correctional officer with whom Plaintiff had a physical altercation,[2] as well as from Yates's disapproval of Plaintiff's admitted "pattern" of frequent masturbation.  (Doc. 100 at 41-42).

On August 14, 2009, Plaintiff alleges that Yates was walking by Plaintiff's cell when he stuck his hand into the cell, grabbed Plaintiff's arm, and twisted Plaintiff's wrist.  Plaintiff described the incident in his deposition as follows:

> Well, I was standing by the bars and when he came to my cell he just grabbed my arm.  I got a long-sleeved thermal on.  He just grabbed my arm and twisted it.  I just stood there like and let him because I knew the camera had it.  I knew the camera had to see it, so I just stood there and let him twist my arm.  He let it go, I took my medication, and he walked off.

(*Id*. at 28).

When questioned in his deposition about whether the incident lasted a few seconds or a minute, Plaintiff replied, "[a] few seconds.  Just he grabbed it for a few seconds and

---

[1]This Court's order granting Plaintiff permission to proceed *in forma pauperis* did not identify the capacity in which Defendants were being sued, but instead instructed the United States Marshal to serve a copy of the complaint and summons form upon each Defendant as directed by Plaintiff.  (Doc. 3 at 3).

[2]Plaintiff testified that he spent six months in segregation as a result of his conviction for assault on that correctional officer.  (Deposition at 12).

twisted it." (*Id.* at 29). Plaintiff does not allege that he suffered any injury from this event other than momentary discomfort, and confirmed in deposition that he suffered no injuries, bruises or marks. (*Id.*, at 31). He did not seek medical treatment since he had no injury. (*Id.*). However, he admitted that he falsely told a nurse on August 26th that his arm was still sore from having been twisted two weeks earlier. Plaintiff explained that "[r]eally it wasn't, but I was just trying to say that." (*Id.* at 40-41).

On August 15, 2009, Plaintiff alleges that he was assaulted by Defendant Yates a second time. On that occasion, Yates again was escorting a nurse for "pill call," but allegedly walked ahead to Plaintiff's cell. Upon arriving at Plaintiff's cell, Yates allegedly swung a can of Ensure that he was holding at Plaintiff, who was ignoring Yates and leaning near or against the bars of his cell. According to Plaintiff, the edge of the can struck him in the forehead, causing a painful "bump," although the impact was partially deflected by the cell bars. Plaintiff submitted a grievance and a nurse examined his forehead on August 19, 2009, documenting a "pencil sized" bruise, which Plaintiff's complaint describes as a "a small minor injury on my forehead which was a small bruised lump." (Doc. 4 at 5).

In addition to his claims against Defendant Yates for these two alleged incidents of excessive force, Plaintiff brings claims against Warden Phillip Kerns and Institutional Inspector Linnia Mahlman, for their "negligence" in failing to protect him from Yates despite Plaintiff's numerous complaints about Yates during the four-month period leading up to the assaults, and for failing to adequately address Plaintiff's complaints following the assaults. Plaintiff further alleges that Defendant Mahlman retaliated against Plaintiff in response to his complaints, by directing two correctional officers on September 8, 2009 to "shake my cell down." (Doc. 4 at 12). On September 9, 2009, Plaintiff alleges that Defendant

Mahlman took additional retaliatory steps against Plaintiff by placing him on grievance restriction, and by lying about the reasons for that restriction. (Doc. 4 at 12-13). Defendant Mahlman states in an affidavit that she did have Plaintiff's cell searched and restricted the number of grievances Plaintiff could file for a 90-day period of time, but avers that the restriction was imposed due to "the large number of unfounded informal complaints filed by inmate Brooks." (Doc. 101-6, at ¶8).

As compensation for his claims, Plaintiff seeks $800,000 for each of the two excessive force claims against Defendant Yates, $400,000 for each of the two claims of negligence (against Defendants Kerns and Mahlman), and $500,000 for the retaliation claim against Mahlman, for a total of 2.9 million dollars in monetary damages. Plaintiff also seeks an institutional transfer to another facility. (*Id.* at 14).

## II. Analysis of Defendants' Motion

### A. Summary Judgment Standard

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir.2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most

favorable to the non-moving party." *Id.*

The requirement that facts be construed in the light most favorable to the non-moving party, however, does not mean that the court must find a factual dispute where record evidence contradicts wholly unsupported allegations. After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (citing *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50, 106 S.Ct. 2505 (1986). The non-moving party's evidence "is to be believed, and all *justifiable* inferences are to be drawn in his favor." *Id.* at 255 (emphasis added). The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

Although reasonable inferences must be drawn in favor of the opposing party, *see Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356, inferences are not to be drawn out of thin air. Rather, it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines,* 602 F.Supp. 1224, 1244-45 (E.D.Cal.1985), *aff'd,* 810 F.2d 898, 902 (9th Cir.1987). To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some

metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"*Matsushita,* 475 U.S. at 587, 106 S.Ct. 1356 (citation omitted).

As discussed below, there is no genuine issue as to any material fact and Defendants are entitled to partial summary judgment on the record presented on most of Plaintiff's claims. However, an issue of material fact prevents judgment from being entered on Plaintiff's Eighth Amendment claims against Defendant Yates.

### B.  Official Capacity/Eleventh Amendment Immunity

The record reflects service on each Defendant, but the summons forms do not reflect whether Defendants were served in their official or individual capacities, notwithstanding the cursory reference by Plaintiff in his unnecessarily long complaint to his intention to sue each Defendant in both capacities. It is open to debate on the record presented whether Plaintiff has achieved service on Defendants in their official, as opposed to their individual capacities. The Defendants' answer (Doc. 36) includes an Eleventh Amendment defense, but the pending motion for summary judgment does not address Eleventh Amendment immunity and instead focuses on defenses specific to Defendants in their individual capacities.

Although not specifically raised in the pending motion, I conclude that Defendants are entitled to judgment as a matter of law to the extent that Plaintiff seeks monetary damages against Defendants in their official capacities, because Plaintiff's claims clearly are barred by the doctrine of sovereign immunity under the Eleventh Amendment. *See generally Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008). SOCF is a facility within the

Ohio Department of Rehabilitation and Corrections, which is an instrumentality of the state of Ohio to which Eleventh Amendment immunity attaches. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999). A suit brought against a state official in his or her official capacity is effectively a suit against the official's office, equivalent to a suit against the state itself. *Wolfel v. Moris*, 972 F.2d 712, 718-719 (6th Cir. 1992).

Because the law on this issue is so clearly established, claims for monetary damages against prison officials in their official capacities often are subject to dismissal on initial screening under 28 U.S.C. §1915(e)(2), which grants authority to dismiss claims "at any time" if a court determines that the claims do not meet minimal requirements for continued prosecution. The Sixth Circuit has affirmed that §1915(e)(2) remains applicable throughout the litigation process. *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997)(abrogated on other grounds by *Jones v. Bock*, 549 U.S. 199 (2007)). Thus, to the extent that Plaintiff has attempted to sue Defendants in their official capacities, his claims should be dismissed and judgment granted as a matter of law in favor of the Defendants, because Plaintiff fails to state any claim upon which relief can be granted, and the Defendants are immune from the monetary damages that Plaintiff seeks.

### C. Claims Against Each Defendant in His or Her Individual Capacity

Having concluded that all claims against Defendants in their official capacities should be dismissed, I turn now to the claims against Defendants in their individual capacities. Because the claims against each Defendant are somewhat distinct, the claims and most of the arguments presented on summary judgment are addressed separately for each Defendant. After addressing the individual arguments, I will briefly address the issue

of qualified immunity, a defense jointly presented by all three Defendants.

### 1. Defendant Yates

Plaintiff's Eighth Amendment claims against Yates are at the heart of this litigation. In an affidavit attached to Defendants' motion for summary judgment, Defendant Yates expressly denies twisting Plaintiff's arm on August 14, 2009 or hitting Plaintiff in the head with a can of Ensure on August 15, 2009. (Doc. 101-1, Declaration at ¶10). The nurse who was present with Defendant Yates on August 14, 2009, Nurse Hall, also has filed an affidavit explaining that she would have seen and documented any assault if an incident had occurred, and that she did not observe Defendant Yates twisting Plaintiff's arm as Plaintiff has alleged. (Doc. 114-1, Declaration at ¶¶3-7). She specifically states that "[t]here is little possibility that CO Yates could have reached his hands in inmate Brooks's cell and twisted Brooks's arm, without me observing the assault take place." (*Id*. at ¶6).

Defendants have submitted two additional affidavits concerning the events of August 15, from a second correctional officer who was assisting with "pill call," and from the nurse who was dispensing medication on Plaintiff's cell block at that time. Both refute Plaintiff's allegation that Defendant Yates hit Plaintiff in the head with a can of Ensure. (Doc. 101-3, Declaration of Teresa Hill, at ¶¶4-6; Doc. 101-4, Declaration of Danny Dean, at ¶¶4-6).

Defendant Linnia Mahlman also has submitted an affidavit explaining that she reviewed video recordings made at the times that Plaintiff alleges he was assaulted by Defendant Yates on both August 14 and 15, 2009, but that she saw no evidence that any assault occurred. (Doc. 101-5, at ¶¶4-6). Unfortunately, as discussed below, those videotapes were not preserved. Defendant Mahlman additionally reviewed the statement of inmate Anthony Martin, who claimed to have witnessed both assaults by holding a mirror

and looking down the cell block. Defendant Mahlman disregarded Martin's statement because she believed it was physically impossible for Martin to see into Plaintiff's cell even with a mirror, given that Martin's cell was several cells away, with solid concrete walls between each adjacent cell.

Defendant Mahlman concluded there was no factual basis for a referral to the Use of Force Committee for formal investigation. Nevertheless, at Defendant Mahlman's request, a nurse examined Plaintiff on August 19, 2009 and noted a pencil eraser sized bruise on Plaintiff's forehead, which, based on the coloration, was approximately two to four days old. (Doc. 101-6, Declaration of Nurse Benjamin Wiget, at ¶5). Nurse Wiget opines that a bruise of that size is inconsistent with a person having been struck with a can. However, Plaintiff protests that the size of the bruise was consistent with his allegations, because the "cell door deflected the total impact that was indendent [sic] by Mr. Yates," (Doc. 109 at 1).

Based on the affidavits submitted in support of the motion for summary judgment, Defendant Yates argues that he is entitled to judgment as a matter of law because no rational trier of fact could credit Plaintiff's account of the alleged assaults. I disagree.

While the argument is not directly presented by Defendant Yates, the Court will also briefly address an argument indirectly raised by Plaintiff in his response in opposition to Defendants' motion for summary judgment, concerning whether the force allegedly used by Yates was so *de minimis* that it cannot support an Eighth Amendment claim.

### a. Credibility Issues and the Rational Trier of Fact

First, Defendant Yates argues that based upon "the overwhelming nature of the evidence in this case, no 'rational trier of fact' could reach the determination that CO Yates

used excessive force against inmate Brooks." (Doc. 101 at 9). While acknowledging the inconsistencies between Plaintiff's affidavit, the affidavit of the inmate-witness, and the affidavits offered by Defendants, Defendants argue that "there is no *credible* evidence that force was used by CO Yates against inmate Brooks." (*Id.*, emphasis added). Defendants argue that Plaintiff's affidavit and testimony simply cannot be considered to be credible by this Court, because Plaintiff "is schizophrenic, bi-polar, hyper, and hears voices and ...admitted that he lied to Nurse Hill when he told her on August 26, 2009, that his arm was injured by CO Yates on August 14, 2009." (*Id.*). Defendants also point out that Plaintiff has "a history of filing unfounded allegations involving the use of force by staff." (Doc. 101 at 10). Defendants disparage Plaintiff's sole witness as a "fellow maximum security inmate...who apparently has x-ray vision and is able to see through solid walls...." (*Id.* at 10). In their reply memorandum, Defendants reiterate that "no reasonable jury could find in favor of the plaintiff who has admitted to being dishonest and relies on the statement of a fellow inmate for whom it would have been physically impossible to see what occurred." (Doc. 115 at 1-2).

In response, Plaintiff does not dispute that "it was impossible for Anthony Gooden to see what happened in Mr. Brooks['] cell," but argues that inmate Gooden was "looking through his mirror down the range. And saw ...Homer Yates lunge at Mr. Brooks['] cell and hit the bars with a can of Ensure." (Doc. 109 at 5). Plaintiff insists that his version of the events in question would be evident on the videotapes of the incidents in question, and requests that this Court review said tapes.

Unfortunately, this Court cannot review the tapes because Defendants failed to preserve them. From the outset of this litigation, indeed, from the time he filed his

grievances, Plaintiff alleged that his version of the facts would be corroborated by the videotaped footage of the two incidents in question. In an order filed on September 23, 2010, the magistrate judge previously assigned to this case denied Plaintiff's request for an order requiring Defendants to preserve and immediately supply this Court with a copy of the videotapes, finding no need for such an order at that time. The Court acknowledged that the videotape might well be pertinent to a future motion for summary judgment, but stated: "The Court has no doubt that defendants are well-aware of their duty to preserve evidence once put on notice of pending litigation." (Doc. 54 at 1). It now appears that the Court's faith in Defendants' ability to preserve the evidence was misplaced.

Plaintiff continued to seek copies of the videotapes. By order filed June 30, 2011, the Court noted Plaintiff's continued attempts to obtain discovery, and, citing interests of judicial economy, directed Defendants to respond to Plaintiff's written requests. (Doc. 92). In response, Defendants produced video footage from Unit K-3 (where Plaintiff was housed) from 2:21:01 pm through 2:39:02 pm on August 15, which Plaintiff argues ends at the point in time that begins the incident in question.[3]

Defendants provided Plaintiff and this Court with the Declaration of Captain William K. Cool, who professes to be "fully familiar" with the operation of the DVR system used at SOCF and with the records pertaining to archiving. (Doc. 105-1). Captain Cool initially stated that only limited video was produced, because the "recordings made by the security cameras at SOCF continually record over prior recordings," and, if "not saved and archived

---

[3]Defendants have filed two copies of a CD showing the same footage with the Court. Defendants also initially produced a short video from Unit J-4 to Plaintiff, but that video has not been produced to the Court as the parties agree it is not relevant to this case.

within three to five days, due to the limited storage capacity of the recording devices, that recoding will be recorded over and cannot be recovered."

In a motion to compel filed subsequent to the Defendants' limited production of the requested videotapes, Plaintiff challenged Defendants' explanation that the relevant videotapes were automatically "recorded over" within 3-5 days of the incidents in question. Plaintiff argued that Defendants' explanation was not worthy of belief, because (1) Plaintiff immediately requested preservation of the tapes; (2) Defendants complied with that request by preserving a few minutes of the requested footage, but not the entirety of the incident; (3) Defendants must have preserved the entirety of the tape initially, because on September 8, 2009, Defendant Mahlman stated in her written response to Plaintiff's grievance that she had reviewed the tape and observed actions that no longer appear on the footage produced in discovery.

Indeed, Defendant Mahlman's 9/8/09 response reflects that she was notified on August 19, 2009 of Plaintiff's allegations of an "unreported Use of Force," referring to the August 15 incident, and that she "reviewed the DVR of your allegations" and observed that "Officer Yates did indeed walk in front of the nurse who was left with the other officer escorting her and Officer Yates did approach your cell, however; at no time did the DVR show that Officer Yates assaulted you with anything through your bars." (Doc. 114-4 at 1-2). A second response by Defendant Mahlman dated 9/10/09 similarly reflects that she reviewed the videotaped footage from "the entire shift form 2 pm-10 pm" on August 14, 2009, "and at no time did Officer Yates reach through your cell bars and assault you as you have alleged." (Doc. 114-4 at 4). It thus appeared that at the time of Defendant Mahlman's response (a date well outside of the period during which that Captain Cool averred that the

12

tapes would be recorded over), the tapes had been preserved.

This Court has reviewed the video footage provided by the Defendants. Contrary to the series of events described in Defendant Mahlman's response to Plaintiff's grievance, which references both a nurse and another correctional officer, the CD reviewed by this Court depicts a single, unaccompanied white male walking down the line over a one-minute period of time. The individual enters the camera's range at approximately 2:35 p.m. and disappears from the camera's view at approximately 2:36 p.m. The individual is wearing red or orange pants and a white t-shirt, is bearded and balding, pauses to speak to inmates several times, and appears to be handcuffed. Other than depicting one of the celled inmates using what appears to be a mirror to look toward the next cell, the Court does not see the relevance of this CD, which Plaintiff describes as showing events immediately prior to his alleged assault by Yates.

Because Defendants failed "to offer any explanation concerning when the tapes were recorded over, or how that occurred given evidence that suggests that they were initially preserved (at least in part) in response to Plaintiff's requests and this litigation," (Doc. 120 at 5), the Court directed Defendants to file a copy of any remaining relevant tape(s) with the Court, and "a written explanation concerning when and how the relevant tape(s) were destroyed." (*Id.*). The Court expressly held Plaintiff's request for sanctions in abeyance pending further review of that explanation, noting that in addition to the list of possible sanctions under Rule 37, Fed. R. Civ. P., the Court could instruct a jury to draw an adverse inference based upon spoliation in appropriate cases. (*Id.*, n.5). When Defendants failed to comply with the Court's order by providing a written explanation of how the tapes came to be destroyed, the Court directed Defendants to "show cause...why

13

Plaintiff's request for sanctions based upon the destruction of the relevant tapes should not be granted, with the Court to determine whether an instruction on spoliation or some other sanction is most appropriate."  (Doc. 122).

Defendants complied with the "show cause" order by filing four new Declarations. Defendant Mahlman now states that, notwithstanding the September 8 and 10, 2009 dates on her written responses to Plaintiff's grievances, she actually reviewed the video recordings much earlier, on August 19, 2009 - the same date that she was notified of Plaintiff's allegations.[4]  She determined after reviewing the recordings that "there was absolutely nothing on the videos that showed that CO Yates assaulted Brooks in any manner on August 14 or August 15, 2009." (Doc. 124-1).  Defendant Mahlman admits that from time to time she would request that certain video recordings be archived, by referring her request to archive to the shift captain.  However, she states that she does "not make the final determination as to which portions of video recordings are actually archived," as that determination is made by the shift captain.  (*Id.*).  Ms. Mahlman does not indicate whether she did or did not request that the August 14 or August 15 recordings be archived, or how only footage from the beginning of the August 15 incident came to be archived.

Captain Cool filed another Declaration in response to the Court's "show cause" order, in which he states that even with respect to grievances involving allegations of excessive force, "[i]f it was determine[d] that the video recordings did not reveal any

---

[4]The Declaration states that 9.5 hours of videotape were reviewed by Ms. Mahlman on August 19, immediately *after* she learned of the allegations.  Ms. Mahlman's assertion that she reviewed videotape of the 8/14/09 incident on August 19 is somewhat inconsistent with her written response to Plaintiff's 9/3/09 grievance.  In her response, Defendant Mahlman discredits Plaintiff's account of the alleged 8/14 incident in part because he "mention[ed] nothing" about it when he was evaluated for injuries on 8/19/09 in response to the alleged 8/15 incident, and apparently did not notify anyone of it until he filed a grievance on September 3.  (Doc. 114-4 at 4).

improper actions, and there was no other information stored on the video that was of value, the video recordings would not be retained."  (Doc. 124-2).

Defendants also filed the Declaration of Austin Stout, the Assistant Chief Counsel for the ODRC with nearly twenty-five years of experience as an institutional staff attorney. Mr. Stout explains that each year there are several hundred "use of force" reports filed at SOCF, of which more than 100 are typically referred for administrative investigation.  In addition, in 2011, 18 grievances were filed by inmates claiming unreported uses of force, and 10 grievances relating to reported uses of force, which Mr. Stout describes as "not atypical."  Since Plaintiff filed grievances concerning both the August 14 and August 15 incidents as "unreported" uses of force, those grievances would have been among the approximately 18 per year of that type.  Mr. Stout represents that "ODRC does not have the capacity to preserve recordings every time an inmate threatens legal action," but again, offers no particular explanation as to why only a portion of the August 15 incident was preserved, and the August 14 video discarded, following Ms. Mahlman's investigation in this case.

Last, Defendants filed the Declaration of the Network Administrator for SOCF, Tom Williams.  Mr. Williams explains that, depending on the amount of activity, the institution's video system records over existing tapes within seven days.  He states that there are only two or three very serious incidents per year when video recordings that are hours in length would be preserved, and that most recordings that are archived are about fifteen minutes in length.  However, despite Defendants' attempts to characterize the relevant videotapes as lengthy, both incidents alleged by Plaintiff are presumed to have fallen within this

"average" length.[5]  None of the four Declarations provide this Court with any greater insight into why the most relevant portion of the videotape from the August 15 incident was not preserved, or why the entirety of the August 14 video was discarded.

In the absence of such critical video evidence, and based on the record as presented to this Court, I have little choice but to recommend that Defendant's motion for summary judgment be denied.  Defendants' motion is based upon issues of credibility, which this Court finds inappropriate to resolve on summary judgment.  Although a court may grant summary judgment when a plaintiff's version of events is so improbable or contradicted by the record that it cannot be believed, that is not the case here.  The Defendants have not shown that it would be impossible for witness Gooden to have observed the events "down the range" on the exterior of the cell, as Plaintiff claims.[6]  Defendants urge this Court to disbelieve Plaintiff because he allegedly has filed false reports in the past, and because he suffers from serious mental illness.  However, neither the fact that Plaintiff may be "the boy who cried wolf" nor the fact that he is being treated for mental illness proves that his affidavit is so incredible that this Court should disregard it.  What this Court is left with then, is a clear dispute of material fact which cannot be resolved on Defendants' motion.

### b. *De Mimimis* Force and/or Injury

Before proceeding on to discussion of the claims brought against the other two

---

[5]Plaintiff's grievance of the 8/15/09 incident alleged that it occurred at some point during a 1.5 hour period of time, but the allegations concerning the incident itself suggest that it lasted no more than a few minutes.  Plaintiff's grievance of the 8/14/09 incident requests review of footage from "6 to 8 pm" - the time period during which the incident is alleged to have occurred- but as previously discussed- Plaintiff testified that the incident lasted less than a minute.

[6]In fact, the video produced by Defendants appears to show this very act.

Defendants in this case, the Court also will address an argument raised by Plaintiff in his responsive memorandum: whether the force allegedly used by Yates was so *de minimis* that it cannot support an Eighth Amendment claim.  An Eighth Amendment claim requires a prisoner to satisfy both an objective component, which requires the pain that is inflicted to be "sufficiently serious," and a subjective component, which focuses on the state of mind of the prison official.  *See Williams v. Curtin*, 631 F.3d 380,  383 (6th Cir. 2011)(citations omitted).

The Supreme Court has clarified that it is unnecessary for an inmate to prove that he suffered from any significant injury requiring medical attention in order to prove the objective component of an Eighth Amendment claim involving cruel and unusual punishment, *see Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178 (2010).  Certainly, the extent of injury is one factor to be considered in determining whether the assertion of force "'could plausibly have been thought necessary' in a particular situation."  *Id.,* quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986).  "That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action."  *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995 (1992).  Thus, the Eighth Amendment's "prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Wilkins*, 130 S. Ct at 1178 (quoting *Hudson*, 503 U.S. at 9).

The Court assumes that the only reason that Defendants do not directly argue that the amount of force used was too *de minimis* to state an Eighth Amendment claim is because Defendant Yates denies using *any* force at all against Plaintiff on August 14 or 15.  In any event, Plaintiff argues in his responsive memorandum that his minimal injuries

are but one factor to be considered.  Plaintiff contends that despite his minimal physical injuries, the fact that Yates acted maliciously and sadistically, in a manner repugnant to the conscience, is sufficient to state a violation of the Eighth Amendment on the facts presented.  In other words, Plaintiff argues that his weak showing on the objective component of his Eighth Amendment claim is outweighed by stronger allegations on the subjective component of his claim.  As the Supreme Court has explained,  "whenever prison officials stand accused of using excess physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*; whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. at 6-7; *see also Wilkins v. Gaddy,* 130 S. Ct. at 1178-1179 ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.").   "[A]s the Supreme Court has held, '[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident.'" *Williams v. Curtin*, 631 F.3d at 383, *quoting Hudson*, 503 U.S. at 9.

Although Plaintiff's injuries are minimal, in light of the above, it is the force that was allegedly used that this Court must now focus on.  In order to prevail Plaintiff must prove that the use of force occurred and that the force used was applied "maliciously and sadistically for the very purpose of causing harm."  *Williams v. Curtin*, 631 F.3d at 383, quoting *Hudson v. McMillian,* 503 U.S. at 6 (internal quotation marks omitted). "Courts may consider "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Id.* at 383, quoting *Whitley,* 475 U.S. at 321.

This case presents close issues on whether the force exercised by the Defendant was so "*de minimis*" as to fail to demonstrate an Eighth Amendment claim, particularly with respect to the alleged incident of August 14, 2009, wherein Defendant Yates is alleged to have momentarily seized and twisted Plaintiff's wrist only for a few seconds. The second incident of August 15, when Plaintiff alleges that Defendant Yates swung a can of Ensure at Plaintiff's forehead, striking him and causing a tiny bruise and/or lump, arguably passes the "*de minimis*" threshold, particularly when viewed in light of the allegations that the incident was entirely unprovoked. *See also Williams v. Curtin*, 631 F.3d 380 (prisoner sufficiently alleged objective component when he alleged malicious use of chemical agent that caused him to suffer from temporary spell of coughing and shortage of oxygen). Given the closeness of the issue, the existence of clear factual disputes on the record presented, and that Defendants do not directly present the argument, I recommend that summary judgment be denied.

## 2. Defendant Mahlman

Plaintiff's allegations against Defendant Mahlman have been construed by this Court as two claims: 1) a claim that Defendant Mahlman failed to protect Plaintiff from Defendant Yates despite frequent complaints by Plaintiff about Yates in the months leading up to the August incidents; and 2) a claim that Defendant Mahlman retaliated against Plaintiff for filing his complaints against Yates and/or Mahlman.

It is uncontested that Brooks has filed over 120 informal complaints, including more than 28 informal grievances, all of which have been found to be without merit to date. Beginning in 2009, Plaintiff also sent 90 messages (commonly referred to as "kites") to complain of various matters. With a few exceptions attached to Plaintiff's complaint, nearly

all of the internal grievances or complaints filed of record by either Defendants or Plaintiff in this case are those pertaining to the incidents on August 14-15, 2009.

In her affidavit, Defendant Mahlman states that during a thirty-day period of time between May 11 and June 13, 2011, Plaintiff filed seven informal complaints, four of which Defendant Mahlman describes as "basically duplications of each other." (Doc. 101-6 at ¶3).  Defendant Mahlman asserts that on September 2, 2009, she put Plaintiff on a 90-day grievance restriction, limiting him to two informal complaints per week, due to "the large number of unfounded informal complaints" that Plaintiff had filed.  (*Id.* at ¶8).  She explains that when an inmate is put on an informal complaint resolution restriction, his cell is automatically searched as part of "normal procedure," to ensure that he does not have more than the allowable number of forms in his cell on which to submit grievances.  (*Id.* at ¶9).  However, Plaintiff contends that there is no written ODRC policy or rule that provides for a cell search based upon an informal grievance restriction.  (Doc. 109 at 9).

### a. Failure to Protect Claim

In *Farmer v. Brennan*, 511 U.S. 825, 833 (1994), the Supreme Court held that "prison officials have a duty to protect prisoners from violence" under the Eighth Amendment.  Although more typically a failure to protect claim is brought in response to violence by a fellow inmate, as in *Farmer*, the same principles are presumed to apply to violence against an inmate by a prison guard.

As with other claims brought under the Eighth Amendment, the prisoner must prove both an objective and subjective component of his "failure to protect" claim.  First, under the objective component of the claim, the plaintiff must show that he was "incarcerated under conditions posing a substantial risk of serious harm" *id.*, 511 U.S. at 834.  Second,

under the subjective component, the court examines the defendant's state of mind to determine whether he acted with "deliberate indifference" equivalent to an intent to punish inmate health or safety. *Id.; see also Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988). To establish the subjective component, a plaintiff must show that the defendants had knowledge of and disregarded an excessive risk to his safety. *Id.* at 837.

On the facts presented, Defendant Mahlman is entitled to judgment as a matter of law on Plaintiff's "failure to protect" claim, because Plaintiff has offered no evidence to demonstrate that (1) Plaintiff complained of an actual threat by Defendant Yates that could have been viewed as a "serious risk" of "imminent" harm by Yates prior to the alleged assaults in mid-August, or (2) that Defendant Mahlman was actually aware of any real danger to Plaintiff from Correctional Officer Yates prior to mid-August 2009. To establish the subjective component, a plaintiff must show that Defendant Mahlman both had knowledge of and disregarded an excessive risk to Plaintiff's safety, see *id.* at 837. Plaintiff's general allegations that in the months prior to the alleged assaults, he complained about verbal harassment by Defendant Yates does not state a "failure to protect" claim against Defendant Mahlman.

While Plaintiff does not provide the Court with copies of his written complaints concerning Yates in response to Defendants' motion for summary judgment, the Court takes judicial notice of the fact that Plaintiff did attach copies of some grievance forms to his original complaint. None of those grievances would have put Defendant Mahlman on notice of an "excessive risk" to Plaintiff's physical safety. For example, in a grievance dated June 25, 2009, Plaintiff references a prior grievance dated April 26, 2009 wherein the shift captain said that Yates would be "talk[ed] to" about alleged harassment of Plaintiff.

21

(Doc. 4-3 at 19-20).  Both the June 25 grievance and the referenced April 26 grievance complain of general harassment and name-calling by Yates, and a threat by Yates to destroy Plaintiff's property; however, such a threat is not the same as the type of imminent threat of bodily harm that would put Defendant Mahlman on notice that she had a duty to protect Plaintiff from Yates.  Most of the grievances concerning Yates reference similar conduct, and for the same reasons, do not show that Defendant Mahlman had knowledge of, or ignored, an imminent threat to Plaintiff's safety.  (Doc. 4-3 at 21-23).  In two of the grievances dated in July 2009, Plaintiff references an alleged threat by Yates "to get some C-Os to jump me and beat me up," (*see* Doc. 4-3 at 22), and expresses a generalized sense that he feels "unsafe."  (Doc. 4-3 at 23).  However, the record also shows that Mahlman investigated those grievances and determined that allegations that Yates had threatened Plaintiff constituted false claims, in part because Plaintiff failed to supply evidence such as "dates and times, [when] these statements were ...made, or any witnesses that may have heard this on the range." (Doc. 4-3 at 24).   Despite determining that Plaintiff's allegations were false, Defendant Mahlman also counseled Yates to remain professional at all times.  (*Id.*).  Thus, to the extent that Defendant Mahlman was put on notice of any physical threat from Yates, she investigated and responded in such a way as to preclude liability in this case for a "failure to protect" violation of the Eighth Amendment.

Plaintiff's complaint also alleges that both Kerns and Mahlman were "negligent" for failing to protect him from Yates.  To the extent that Plaintiff attempts to allege any related claim of pure "negligence" as opposed to an Eighth Amendment claim against Defendant Mahlman, such a claim  would not fall under 42 U.S.C. §1983, but under state law.  *See Rodriguez v. Passinault*, 637 F.3d 675, 682 (6th Cir. 2011)(holding that a Plaintiff must

show more than negligence to state a claim under §1983). Under Ohio law, Plaintiff is required to first assert his claims of negligence in the Ohio Court of Claims to determine whether the state employee is entitled to immunity or acted manifestly outside the scope of his or her employment. ORC §2732.02(F). Absent such a determination by the Ohio Court of Claims, this federal court will not assert pendent jurisdiction. *Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 2005). In fact, this Court previously dismissed another Defendant in this same case for the same reason. (*See* Doc. 69, dismissing Defendant Croft, an officer identified as a new Defendant in Plaintiff's amended complaint). *See also Grooms v. Marshall*, 142 F. Supp.2d 927, 932 (S.D. Ohio 2001); *Powell v. Morris*, 184 F.R.D 591, 597 (S.D. Ohio 1998).

### b. Retaliation Claim

In order to state a retaliation claim, Plaintiff must show that he: (1) engaged in protected conduct; (2) that Defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that a causal connection exists between the first two elements; that is, that "the adverse action was motivated at least in part by the protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Defendant Mahlman argues that she is entitled to summary judgment on Plaintiff's retaliation claim for several reasons. First and foremost, she argues that Plaintiff has not engaged in any protected conduct. Defendant contends that there is no constitutional right to file frivolous grievances, such that Plaintiff's conduct was not entitled to any constitutional protections. *See Spies v. Voinovich*, 48 Fed. App'x 520, 524 (6th Cir. 2002). Defendant Mahlman's point is valid only in part, because it is impossible for this Court to

23

determine whether all or even most of Plaintiff's grievances were legally "frivolous." As noted in *Spies*, *id.* at *4 n. 8, "[t]here is considerable difference between a claim that is frivolous..., and one that, though colorable, ultimately is found to be without merit."

In any event, in response to Defendant's motion for summary judgment, Plaintiff suggests that Mahlman retaliated against him and restricted his ability to file grievances not because of grievances against Yates, but instead because Plaintiff filed a grievance against Defendant Mahlman herself on August 25, 2009. (Doc. 109 at 3). Plaintiff asserts that the cell search was part of the same course of "harassment" taken against him by Mahlman for filing grievances.

Plaintiff alleges that Defendant Mahlman gave a false reason for putting him on grievance restriction initially, by claiming that he had filed numerous grievances over RIB issues, which Plaintiff denies ever having done, but particularly denies having done during the four months leading up to August 2009. In the letter dated September 3, 2009 announcing the grievance restriction, Defendant Mahlman states that the reason for the restriction is Plaintiff's abuse and misuse of the grievance procedure "over the past several *weeks*." (Doc. 109 at 13, emphasis added). Defendant Mahlman specifically accuses Plaintiff of "continuously fil[ing] Informal Complaints regarding RIB issues, when you have been informed several times is not a Grievable issue due to having a separate appeal process." (*Id.*). In her first affidavit in support of the pending motion for summary judgment, Defendant Mahlman pointed to only two such grievances. (Doc. 101-6 at ¶3). In her more recent affidavit, she further retreats from that explanation, referring to only a single informal complaint concerning an RIB decision that was filed prior to August 15, 2009, dated more than *seven months* prior to the imposition of the grievance restriction

24

(Doc. 114-3).

In the motion for summary judgment, Defendants more broadly contend that Plaintiff was placed on grievance restriction based upon the total number of "frivolous" grievances he had filed since 2007, with "no credible evidence that Ms. Mahlman had any improper motive for taking this action." (Doc. 115 at 2). However, Plaintiff's total history of filing grievances since 2007 was not listed by Defendant as the basis for the grievance restriction at the time the restriction was imposed, when Plaintiff's alleged RIB grievances were cited, or in response to Plaintiff's discovery requests in this case, when Mahlman instead cited Plaintiff's allegedly frivolous claim against Yates as the basis for the restriction. (*See* Doc. 109 at 12, Mahlman response to interrogatories).

Given the variations in the reasons provided by Mahlman for the grievance restriction and cell search as well as the ambiguity in the record concerning how many legally "frivolous" grievances Plaintiff may have filed, I find the record to be unclear as to whether Plaintiff was engaged in constitutionally protected conduct. Nevertheless, I conclude that Defendant Mahlman is entitled to summary judgment on Plaintiff's retaliation claim, because Plaintiff cannot show that the grievance restriction and related cell search would have deterred a person of ordinary firmness from continuing to file legitimate, non-frivolous grievances. *See Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir. 2005).

There is no dispute that Defendant did not prevent Plaintiff from filing all grievances, but instead merely restricted Plaintiff to filing 2 informal complaints per week for a period of 90 days. The letter notifying Plaintiff of the restriction clearly explained that Plaintiff would retain "unrestricted access to the Kite system," and that he would "have staff available to you daily" for any "emergencies" that Plaintiff wished to address either through

25

a Kite or in person. (Doc. 109 at 13). I conclude that the limited restriction imposed by Defendant Mahlman did not abridge any of Plaintiff's constitutional rights.

Plaintiff argues that he has a constitutionally protected due process right to file written grievances, because the PLRA requires him to exhaust the administrative grievance procedure before he can file a complaint in this court. This argument has been previously addressed and rejected by this Court. (*See* Doc. 69 at 5, holding that "the PLRA did not establish any new rights not previously recognized under the United States Constitution."). Even if a reviewing court were to disagree, I conclude that Plaintiff's ability to pursue his administrative remedies as required by the PLRA was not significantly impaired by the temporary and limited-in-scope restriction that was imposed. The fact that Plaintiff's cell was searched on one occasion in conjunction with the grievance restriction does not alter my conclusion that a prisoner would not be deterred from filing non-frivolous grievances as a result of the alleged retaliation. It is well-recognized that a prisoner does not have a constitutional right against unreasonable searches and seizures of a prison cell. *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). Whether or not a written policy or rule exists, searching the cell of someone who was on grievance restriction to ensure that he did not have access to an excessive number of complaint forms was not unreasonable.

Defendant also argues that Plaintiff cannot satisfy the third element of his claim by showing a causal connection between the fact that he filed a grievance against Yates specifically, and her allegedly retaliatory action. However, as discussed, factual disputes in the record - including Defendant's response to Plaintiff's interrogatory on this issue - preclude judgment from being granted in Defendant's favor for that reason.

### 3. Defendant Phillip Kerns

Plaintiff alleges that Defendant Phillip Kerns, who was the Warden of the Southern Ohio Correctional Facility at the time of the alleged incidents, failed to protect him from the assaults by Yates and failed to adequately resolve Plaintiff's grievances over the issues presented in the complaint. Defendant Kerns argues that he cannot be held liable under 42 U.S.C. §1983, because his only actions were to review Plaintiff's grievance and a portion of a video pertaining to that grievance. (Kerns Declaration at ¶¶3-5). Additionally, Defendant Kerns argues that he is entitled to qualified immunity.

Defendant Kerns is entitled to summary judgment based upon Plaintiff's failure to allege that the Warden "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Hays v. Jefferson County, Ky.,* 668 F.2d 869, 874 (6th Cir. 1982). Indeed, in his response to Defendant Kerns' motion for summary judgment, Plaintiff concedes that Defendant Kerns did not directly participate in any allegedly unlawful conduct. Plaintiff "agrees that he cant [sic] dispute that Philip Kerns is entitled to qualified immunity. Because in all honesty, he has not personially [sic] tried to assult [sic] Mr. Brooks." (Doc. 109 at 8).

### 4. Qualified Immunity

All three Defendants assert that they are entitled to qualified immunity on all claims brought against them in their individual capacities. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). The purpose of qualified immunity is to provide governmental officials with the ability "reasonably to anticipate when their conduct may give rise to liability for damages." *See Anderson v. Creighton*, 483 U.S. 635, 646, 107 S. Ct. 3034, 3042 (1987) (internal quotation omitted). Thus, a governmental official performing

27

discretionary functions will be entitled to qualified immunity unless his or her actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. A governmental official is entitled to immunity if the facts alleged do not make out a violation of a constitutional right, or if the alleged constitutional right was not clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*,129 S.Ct. 808 (2009).

When a defendant moves for summary judgment based on qualified immunity, the official must first show that he/she acted within discretionary authority. *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). Once an official makes this showing, the burden shifts to the plaintiff to prove that the officer violated a right so clearly established that any reasonable official in that position would have understood it was unreasonable to engage in the conduct that violated the right. *Id*. In this case, Plaintiff has made no claim that Defendants were acting outside their authority, so the burden falls on Plaintiff to overcome the qualified immunity defense.

As discussed above, Plaintiff does not oppose Defendant Kerns's assertion of qualified immunity, which the Court finds to be justified. Defendant Mahlman also is entitled to qualified immunity. Plaintiff failed to establish any Eighth Amendment "failure to protect" violation by Mahlman. Plaintiff had no clearly established right not to have his cell searched, and had no clearly established constitutional right to file unlimited numbers of grievances. In sum, Plaintiff's complaints against Defendants Kerns and Mahlman fail to allege a violation of any constitutionally protected right.

By contrast, Defendant Yates is not entitled to qualified immunity. Based on the facts alleged, a reasonable correctional officer would have understood that it is a violation

of the Eighth Amendment to maliciously and sadistically inflict physical punishment upon an inmate without provocation.

### III.  Conclusion and Recommendation

Accordingly, **IT IS RECOMMENDED:**

1. That the Defendants' motion for summary judgment (Doc. 101) be **GRANTED IN PART** and **DENIED IN PART**;

2.  All claims against Defendants Kerns and Mahlman in both individual and official capacities should be **DISMISSED WITH PREJUDICE,** as well as all claims against Defendant Yates solely in his official capacity.  However, Defendant Yates is not entitled to summary judgment for the Eighth Amendment claims brought against him in his individual capacity.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

ULIOUS BROOKS,                                          Case No. 1:09-cv-922

        Plaintiff,                                    Spiegel, J.
                                                       Bowman, M.J.

    v.

HOMER YATES, et al.,

        Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).